The next case is Skoczen v. Department of Veterans Affairs, Appeal 7084 from 2008. Mr. Carpenter, good morning. Good morning, Your Honor. Would you clarify for us whether the retreats that you made between the blue brief and the gray brief are going to be followed by further retreats, or whether your final position is as stated in the gray brief? My reading was that you made numerous, what I'll call very broad assertions in the blue brief, but in the gray brief you substantially reduced the scope of each of those assertions. I'm just trying to figure out whether your final position is going to involve yet a further narrowing, or whether the articulation of your arguments in the gray brief is your final resting point. Well, Your Honor, my difficulty is that there is no case law here, so there's no parameters upon which to deal with this except by comparison. And what I was attempting to do in the reply brief was to respond to the specific assertions made by the government in terms of how they viewed the burden of proof paradigm, if you will, within the context of the VA system. So I was not intending to retreat. What I'm trying to get is a clear, fixed, not moving understanding of how you think the court should define burden of proof. Well, I do not believe that there is a burden of proof that is supportable by the language of 5107A. Is there any requirement on the claimant? There are two requirements, to support and to submit. And what does support mean? I believe support means to respond to any inquiries by the VA for additional information or evidence concerning the application that was made for benefits. That's all he has to do? That's all he has to do. So if I'm a veteran, I can write a letter and say I'm totally disabled, I want full compensation, yours truly? Well, actually, Your Honor, the answer to that is yes. And that claim couldn't be summarily rejected by the regional office? No, I do not. How is that supporting the claim, to simply state the claim? I'm disabled, I want benefits, end of letter. Let's back up first, Your Honor. I appreciate your hypothetical, but within the VA system, the VA produces a VA form that's umpteen pages long to complete for an application for benefits. In that application form, it merely asks you to identify what you're currently being treated for, where you served, and does not mention any of the particulars to support a claim, i.e., medical nexus, within the VA's own application form. So what we're dealing with here, and particularly in this case, is not an application for benefit, but a determination as to what the evaluation of that degree of disability is. There is no application form that says I believe I am entitled to X percentage of disability. Well, let me ask this question. My understanding is they don't even have to use the form. That's correct. They can just write a letter. They must merely express a clear intent to apply for a benefit. Yeah, but the statute says support. So as Judge Post is suggesting, there must be some meaning to the word support different from present. They present the claim. My claim is I'm disabled, I need compensation, I have a psychiatric problem. That's the presentation of the claim. What's the support? The support is in response to the notification under 5103 as to the evidence necessary to substantiate the claim. And once they receive that information, if there is something that they are directed to present in addition or support in addition, for instance, let's take the question of incurrence. We are unable to locate your military personnel records. Do you have any documentation that would confirm that you were on active duty from X time to Y time? You're clear. It's entirely passive. The veteran doesn't have to do anything except state a claim and respond if the VA requires him to do something further. That's correct. But if the VA comes in and says you have to come forward with information to support your claim in all regards, then are you contending then it's okay to place the burden on the claimant, but the VA has to go through this intermediate step? No, Your Honor. I don't believe it imposes any burden on the VA as we normally understand the terms of burden of proof. The burden of proof is on the VA to fully develop the record to determine whether or not the evidence that has been developed by the VA meets the criteria either for entitlement to compensation in the first instance or, as in this case, what the appropriate rating would be. But in this case, isn't it a fact that you did meet some burden in the sense that the veteran did support his claim to the extent that they found that his score was 70 percent? So it isn't like he didn't do anything. He did something. He showed he had PTSD. He showed he was in a situation that might have caused that. And then, as far as I read the record, he made an admission that it didn't amount to 100 percent score. So there actually was a mix of factors here that the trier of fact was able to balance and come out against your client. So I don't know. I think a lot of the discussion in the briefs and even the ones we've been having here are almost hypothetical in this case. Well, they are hypothetical, Your Honor, because there is such, frankly, gross ambiguity in the statute. Present and support does not give a claimant an idea as to what it is that their responsibilities are. In the prior version of this statute, the header, the title was burden on the claimant. It now refers to responsibilities of the claimant. Now, that does not... Can we get away from the statute for a moment? I think this is what our district court judge was getting at. What is the applicability to the facts in this case? It seems to me, if you look at the board decision, even if you were right in your statutory interpretation, I don't see how it's applicable at all to what happened here because, in this case, the board concluded, based on the record, that there was medical evidence that indicates the veteran remained oriented to time and his memory was essentially intact. In other words, he doesn't deserve the bump up from 70 to 100. What is wrong with that, even under your interpretation of the statute? Well, what is wrong with that is, and now this goes to the rating criteria that's utilized, and prior to an amendment by Congress this last fall, we weren't able to attack the rating schedule. We are now able to attack the rating schedule as of last October. So we were prevented from going directly towards the rating criteria. But if you look at the record, Your Honor, what the board did at pages 61 and 62 of the joint appendix. That's exactly what I was reading from. I was reading from page 62. And what they do is simply give declaratory statements that the veteran is not entitled, however, to the maximum scheduler criteria. They give no explanation as to why, other than as you cited, that he was oriented to time and his memory was essentially intact. There is no correlation between oriented to time and memory essentially intact to be entitled to a total rating under the schedule. What the scheduler rating provides for is a total social and occupational impairment. But it gives no explanation, it gives no indication to the veteran as to what evidence he needs to come forward with to prove, if he has a burden of proof, what it would be that would show a total and occupational impairment. So explain to me how, even if we were to agree with your statutory interpretation, that is applicable to this case, to what happened here. What is the change, given what the board has already found? The change would be that the board would have an affirmative obligation to show where in the record there is a preponderance of evidence against the claim. As the Veterans Court analyzed in Gilbert, there are essentially three considerations. The evidence is in equipoise, the veteran wins. There is a preponderance of evidence in favor, the veteran wins. There is a preponderance of evidence against, the veteran loses. That should be the VA's burden of proof. It seems to me what, as a practical matter, you are taking issue with is not the burden in terms of how it applies to this case, but really you don't like the criteria they used to establish total occupational and social impairment. They did make a finding that he was oriented to time and that his memory was intact. Your argument is that that isn't sufficient to establish total occupational and social impairment. I'm saying there is not a preponderance of evidence to support that conclusion in this record. Which conclusion? That he remained oriented to time or that there is a total occupational and social impairment? That there was not a total occupational and social impairment. Because you're saying that their findings of fact were sufficient to establish that. No, I'm saying that the evidence did not arise to the level of preponderance and that they should have the burden of demonstrating where in the record and showing in the record where there is a preponderance of the evidence. They don't even mention the fact that there is or isn't a preponderance of evidence. They simply declare it. Well, isn't the fact that your client admitted, and I'm quoting from page 1 of the appendix now, that his symptoms as recorded in the medical evidence do not include those listed in DC 944-9440 as exemplifying total occupational and social impairment required for a 100% rating. Did he make that admission? No, actually he didn't. I did. And I made it in the brief in the context of the diagnostic code that is relied upon by the VA to rate psychiatric disabilities. And there is a listing that starts with, as Judge Prost described, total and social impairment and then gives a litany of descriptions of potential symptoms. The problem here is that when you have post-traumatic stress disorder, you don't have that entire litany of symptoms. There is no veteran who suffers from post-traumatic stress disorder. Not every veteran who suffers from post-traumatic stress disorder is going to have that entire litany of symptoms. Now, there are in fact some who do because their condition reaches a level of psychosis, but you don't need to have a psychosis in order to be entitled to a total rating. Are you saying that if there are ten factors, the veteran can still win on total disability if he has zero out of the ten factors? No, Your Honor. What I'm saying is that in order to defeat the claim, in order to deny him the right to a 100% scheduler rating, the VA, and in this case the board, must be able to demonstrate where in the record there is a preponderance of evidence against those criteria. So your answer to Judge Michel is, yeah, he could win, because if they don't demonstrate a preponderance of evidence, then he wins. Well, he has to have some of them, Your Honor. The question is, to what degree? I don't understand. He has to have some of them? So he has some burden, but not all burden? No, no, no. I'm saying the medical evidence meets some of that checklist, if you will, of identifiable symptoms. He has some of those symptoms. The question becomes, how many of those symptoms do you have to have before you ring the bell to get the 100% rating? Okay, I'm having trouble sleeping. That's my symptom, and I'm claiming 100% disability for PTSD. What is the Veterans Administration required to do in order to satisfy that I don't get 100%? Because you're saying the burden is entirely on the Veterans Administration. Right. It is to show that that single symptom alone is not sufficient, does not arise to the level of either equipoise or a preponderance of evidence in favor of a total and subsocial impairment as a result of that single symptom. But I would suggest to you— How do they show that? From the medical evidence, Your Honor. If you look at the Board's decision— disability as being total impairment, sleep does not do it— does that satisfy their preponderance burden? To simply declare it? No. But they have to refer to the evidence. If you look at the Board's decision, the Board's decision covers the description of the medical care provided to this Veteran beginning in March of 2002 in Pueblo, at page 55 of the record, going through page 59 with a final letter of May 2005. And part of what you see in this documentation of his psychiatric symptom is something called a GAF score. That is a Global Assessment of Functioning score adopted by the American Psychiatric Association. And the VA has adopted that for the purposes of rating mental disorders. And he has had scores that range from 50 to 54 to 45 in 2004, and I believe 52. And then in May of 2005, a GAF score of 45. So when you have those fluctuating Global Assessment of Functioning scores, the VA has that evidentiary base to deal with. That's the evidence that has been accumulated, has been assembled in this record. And then they need to compare that against the rating criteria that they have and show why that evidence amounts to a preponderance of evidence against the award of a 100% rating. It sounds like you're saying that in order to prevail in your client's case, the VA would have had to produce a medically competent witness, presumably a psychiatrist or a psychologist, who would say that he couldn't possibly be 100% disabled on the basis of the symptoms observed. Well, Your Honor, it's not a question of they would have to produce. The evidence that would develop would have to be able to show that. If the evidence didn't show that, but it showed... the board can't draw the conclusion, which leads me to think that you're implying that some witness with technical competence in psychiatry, presumably, would have to be the source of drawing that conclusion. Otherwise, per your argument, the VA has not disproven 100%. Your Honor, in this case, the initial rating assigned by the VA was 50. He took an appeal to the board. The board found that he was entitled not to the 50 that was assigned by the VA, but entitled to the 70. So what they did is they looked at the evidence. They weighed the evidence. But what they didn't do, and what I believe they impermissibly did, was to shift the burden to Mr. Skozin here to prove that he was entitled to the 100%. By their declaration in the concluding paragraphs of their board decision that he was simply not entitled to the maximum rating. They gave no discussion in their analysis to support that, particularly in relationship to what I believe is the VA's burden, vis-a-vis the analysis of the evidence on a preponderance of the evidence continuum. I'm still totally baffled, totally lost in what your basic argument is. When you boil it all down to the bottom line, I don't understand at all what you're saying. Now you seem to be saying, if I'm understanding you at all, that the VA has all the burden and that they have to disprove any possibility that he's 100% disabled, and that they have to explain it in detail in their opinion or it's automatically reversible error per se. No, Your Honor. I'm not saying they have to disprove it. They have to show where in the record they developed there is a preponderance of evidence against the claim. Under the rule of law created by the Veterans Court below, they say in the AB decision that the VA is required to presume that a veteran is seeking the maximum benefit. Well, on the continuum for psychiatric disabilities, he started at 50, they gave him 70, the only thing left was 100. I thought he specifically asked for 100, so they're not lacking notice what he's asking for. The question is who has to prove what before we know whether he gets 100 or stays at 70. That's correct, Your Honor, and I'm simply saying that when they write a decision that denies him benefits, they have to support that decision by pointing to a preponderance of evidence against the claim. Not that it's totally against the claim, but there is a preponderance of evidence against the claim, and that that is their burden. Well, that sounds like you're saying that they may have had enough evidence, but they didn't write a good enough opinion, and therefore we should reverse because the opinion wasn't well written. No, no, I'm not saying that at all, Your Honor. I'm trying to present a clear question of law as to the allocation of burdens and whether there is any support for the notion that there is any allocation of burden other than to present and support a claim by a claimant, and that in this unique context that the burden remains exclusively with the VA. From day one, from the day he sent in the form? Correct. So in order to get 100 percent, you need to establish what is it, total impairment? Total social and occupational impairment, I believe, is the language. So if there's no evidence in the record to establish total and social impairment, the claimant gets 100 percent under your view of the way this ought to operate? No, Your Honor. In this case, using the facts of this case, we believe that the GAF scores of 50 and 45, and there's at least one 50 and two of 45, is evidence of a total social and industrial impairment. What's the denominator? What's the score go to? What's the most extreme possible score? Is it 100? Actually, I believe it's zero. It's a zero to 100, and it's in the DSM, and they have a little rating table. The scores at 45 or 50 or so are not very extreme. No, they are very extreme. It's 50 or below is when it becomes extreme. 50 or above, it's sort of borderline serious, but it hasn't really become extreme. 50 or below is extreme. So what you're proposing to us is the way we ought to interpret the statute. Is that limited, though, to cases like you're talking about the case, well, when you have 50 percent or 70 percent, you ought to do it this way. But I understood your argument about statutory construction to apply across the board to cases where there's been a determination of 50 percent, but also to cases where there's been a determination of zero or 10 percent. The rule you're proposing would apply to all of those cases, not simply to those cases where there's been a 50 percent determination. Oh, that's absolutely correct, Your Honor. It would apply to the initial determination of entitlement compensation and then to the determination of rating or any of the various other decisions that have to be made by the VA in terms of allocation of benefits. Now, if a GAF score of under 50 shows severe impairment, then why doesn't the evidence in this case carry a burden, assuming you have it, in favor of your client? He proved 100 percent disability because he had consistent GAF scores of 50 or below, which you've told us shows severe impairment. So every time he proved severe impairment. So why does it have any effect on this case at all as to what the burden of the government is? He carried his burden. Because of the ambiguity of the rating schedule. If you go to the diagnostic code at 9411 to review the diagnostic criteria for post-traumatic stress disorder, you'll find that post-traumatic stress disorder is evaluated in the exact same way as every other psychiatric disability. And the rating criteria for 100 percent is the same for a psychosis as it is for post-traumatic stress disorder. The VA makes no distinction between the label other than the diagnostic code and the rating criteria. And that's why I mentioned parenthetically that we were previously unable to attack that rating criteria. Now we're able to attack it. But you're not doing it in this case. And I'm not doing it in this case. Well, I couldn't do it in this case. What are you doing in this case? In that case, I still don't understand what your basic bottom line contention is. I want the VA to have a direction from this court that it is their burden and that there is no burden on any claimant to prove anything. In any case? In any case. Whether it involves physical injuries or psychiatric injuries or whether it's 5 percent or 100 percent or regardless? If the veteran files an application and they request his support or her support and she refuses to provide information, then that's a different animal. But if they support the claim, provide the evidence, the evidence is developed, then the burden is on the VA. And what precisely would they have to show in this case in order to establish a denial of 100 percent? That there was a preponderance of evidence against the award of 100 percent. Specifically how? I mean, to show that he was not totally impaired socially or occupationally? But, Your Honor, that's no different than if the burden is on me. Is the answer yes to what I'm saying? That they have to show that he was not totally socially or occupationally impaired? That there's a preponderance of evidence that he was not. That they have to prove the negative. And I agree that is a very difficult burden, but this is a unique system and a system that has no specific statutory direction from Congress as to what evidentiary burden is on the veteran in order to be able to obtain benefits. But once the veteran does submit support, isn't it then within the discretion of the board or the veteran's court to weigh that evidence? And if that weighing results in a decision against the veteran, isn't that entitled to great deference? And that's why I said I think this whole thing is hypothetical because here your client did come forward with evidence. It isn't like I didn't support it. But I did support it, and they ruled against me. Isn't that like a finding of fact? And that's why we framed our argument below to the veteran's court that the board misapplied the burden, that they allocated a burden on the veteran that does not exist and is not supportable within the statutory system. I don't think they did that at all, though. I mean, I think the board seems to have concluded, probably based on preponderance of evidence, that the veteran was oriented to time and that his memory was essentially intact. So let's assume that is supported. It seems to me you really take issue whether or not those criteria are sufficient for establishing the lack of total occupational and social impairment. With all due respect, Your Honor, it's just the opposite. There is not a preponderance of evidence in this record to support the conclusion that because you are oriented in time... That's right. So you're saying those are the improper criteria to be used in evaluating occupational and social impairment. And therefore, there was no lawful or legal basis to have denied him the 100% rating. They agreed that he was not entitled to the 50% and he was entitled to the 70%, and then they were required to consider the 100%. And the only way to defeat the 100% is if there is a preponderance of evidence against the 100%. And that this is no different than the initial decision on entitlement to benefits. How do we have any jurisdiction to review the weighing of the different psychiatric factors by the board? I don't think you do. I think you have the singular or limited jurisdiction to decide the question as to whether or not there is any allegation of burden of proof to submit evidence by a veteran. Where did the board say that it was imposing the burden on the veteran? The board did not say that. We challenge the way in which the board arrived at its decision by suggesting to the court below that it imposed a burden on the veteran to do more than just support the claim to prove that he was entitled to 100%. So you're essentially arguing to us that you think a fair reading of the veteran's board decision, although it doesn't say anything about burden of proof, implicitly put on the veteran a burden of proof and then ruled against him because he didn't carry that implicit burden. Yes, Your Honor. And more importantly, it made no reference to the level of evidence that it relied upon and that the only lawful level of evidence that it could have relied upon was a preponderance of evidence against the claim. But they say the medical evidence recited above indicates the veteran remained oriented to time and his memory was essentially intact. I don't think that evidentiary finding was challenged, right? So assuming they did have a burden, I think you could read it as the government satisfied their burden. If before the word evidence was preponderance, then I would agree with that, Your Honor, but they simply said the evidence. Well, if we can imply that they put all the burden on your client, even though they don't say so, why can't we imply from the same opinion that they did weigh the evidence and found that the government had satisfied whatever its burden is, had disproven 100% because of the orientation found to exist in time and place, etc. Because you're not reviewing the board's decision, Your Honor. You're reviewing the decision of the court below, and the decision of the court below rejected Mr. Skosin's assertion that the board imposed a burden on him. You are not looking at that application of law to fact. You're looking at the question of law that was rejected by the court below that there was a burden, a finding made, that there is a burden on a claimant beyond the support of the claimant and that the allocation of burden at law should be a preponderance of evidence. All right, we've given you double the allocated time, so let's hear from the government. Mr. Hockey. Please, Court. We've heard three different arguments so far this morning that don't really involve burden of proof. First, we heard a challenge to the rating schedule, which counsel has admitted he can't challenge. The court doesn't have jurisdiction over that. He challenged the weighing of the evidence, which this court doesn't have jurisdiction to consider. And what I've heard more recently with respect to the board decision is really a challenge to the reasons and bases, a 7104 challenge to the way the board wrote their decision, highlighted by the comment with respect to if we had had the preponderant word included in the decision, there wouldn't really be an argument here today. I think Judge Polis is right on with the discussion of the board decision. But leaving that aside for a moment, and you'll probably have time to get to it, but the government isn't conceding that, yes, the burden is on the Veterans Administration by a preponderance of evidence, but that was met in this case. The government is taking issue whether or not there's any burden on them at all. When you read 5107A and B together, it's correct to say that when the weighing of the evidence is conducted, the decision maker, the fact finder, looks at the evidence and says, if the evidence preponderates in the favor of the Veteran, he clearly wins, and if it preponderates against the Veteran, he clearly loses. And 5107B says where there is a tie, in baseball parlance, the tie goes to the runner, in this case the Veteran. So that's the big difference between your general burdens where usually you have to demonstrate that you win. You win 51% or depending upon the setting. In this case, the Veteran, the evidence only has to show 50%. Now, how do we get there? And that's, you know, the collection of the evidence. Does the Veteran have a duty? Yes, he does. Clearly he's always had a duty to present and support his claim, and that's what 5107A says. And what happened, well, all that happened after the VCAA was prior to the VCAA, as this court well knows, before the VA's certain VA duty to assist responsibilities kicked in, the Veteran had to submit a well-grounded claim, which involved the submission of some sort of evidence addressing all three of what we call the collusive factors, in-service event, present disability, and the nexus that connects them. And after a submission of a, quote, well-grounded claim, then the VA's duties started. And, of course, in the Morton decision, the Veterans Court held that in the absence of a well-grounded claim, certain duties that were identified in the VA Veteran's manual didn't have to be performed. And then Congress changes that and basically says, we're getting rid of this well-grounded claim requirement. Now you submit a substantially complete application, and the VA's business starts right away with the issuance under 5103, subsection A of the notice, and the responsibilities under 5103, capital A, B, related to gathering documents, C, other documents from inside the government, and C for... But in this case, there's no issue about the government having failed to gather documents. There's no issue about a failure of a medical examination. One was provided. So there doesn't seem to be an issue of insufficient assistance, all the assistance anybody can suggest should have been provided was provided. Correct. And I think, see, that seems to be, when you talk about what the responsibilities are, the argument before the Veterans Court is going to always involve the assistance, the level of assistance. Did you meet your statutory requirements under the assistance statute? Once the evidence is all gathered, then it's just up to the decision-maker to determine, where are we on the spectrum of 0 to 50 and 50 and beyond. Did the VA, did the Department of Veterans Affairs actually gather all the evidence that, let's say, a civilian psychiatrist would say is the standard of care for post-traumatic stress disorder assessment? I have a reaction to this argument, and it is. I'm just asking you a question. No, the answer is yes, it did. But I also want to respond to the attack upon what happened here by the veteran claimant in this case, because it seems to me that they're introducing some sort of adversarial concept to the collection of evidence. What happens is, as Your Honor suggested, the VA goes out and engages VA doctors or independent medical physicians to provide assessments of the individual's status. Is that what happened here? It did. An outside doctor? I'm not sure about the outside doctor part, but there were several medical examinations obtained. As you know, the VA will typically try to use their own resources for financial reasons, but setting that aside... But you're not answering my question. My question was, if a civilian psychiatrist, in assessing the degree of impairment caused by post-traumatic stress disorder of a civilian person, as the standard of care would recognize that you have to assess six different things, but the VA examination ignored three of the six, wouldn't that constitute a failure of reasonable efforts to assist the veteran to substantiate his claim? I think that might, Your Honor, but that's not what happened here. And that's my point. When you look at the record of this case and the board decision... How do we know this? I've read the board decision where they go through... We don't even have the doctor's report in the record that I could find. You may not have the doctor's report, but... Then how can we assess whether he did a competent post-traumatic stress disorder disability assessment? You'd have to ask Congress to allow you to change your jurisdictional statute to make that assessment. That assessment is conducted by the board and reviewed by the Veterans Court. So whether or not the medical reports in this appendix, this court can't look at that. For example, suppose that the doctor... And suppose it was done by a foot doctor, not a psychiatrist. Wouldn't that, on its face, establish that the VA failed to provide the statutorily required assistance? Again, that's a... I would generally... I mean, you can't say it always would be the case. There may be some reason why this particular doctor is qualified, but that's a determination for the lower reviewing bodies to make. So the answer to Judge Michelle's question is yes? I would say generally, provided... I would say this, Chief Judge Michelle, if the evidence indicated that the foot doctor was not qualified to provide... Well, that's what I'm stipulating by calling him a foot doctor. He doesn't know anything about mental illness. I know. Agreed. But not being a physician myself, I don't want to obtain anybody's medical credentials. But accepting that as the basis, that would be a duty-to-assist argument. But you're saying we're not allowed to review it. This court isn't. Well, I'm only interested in this court. I don't know anybody in this court. That's a question of the application of law and facts. Now, how about this hypothetical? Mr. Skozin comes in. There's a well-qualified psychiatrist on the VA staff who's done many assessments for post-traumatic stress disorder and degrees of impairment. And he says to Mr. Skozin, How do you feel today? And Skozin says, Okay. End of interview. Goodbye. Assessment over. No rating increase. Isn't it perfectly obvious that that's a farce, that that's not proper assistance by the Department of Veterans Affairs? And frankly, Your Honor, the board remands those kinds of cases all the time. What you, the Federal Circuit, see is a final board decision and a final Dutchess Court decision that has resolved all those. For example, in this case, there were two prior remands by the board for the further development of the evidence. Now, I've seen many cases in my time where those early remands by the board are precisely to address the concerns that you've raised. The individual doesn't seem to have been the right person to conduct the examination. But why isn't it a legal issue to define the statutory language, which, if my memory is correct, goes something like reasonable efforts to assist? Why isn't it within the jurisdiction of this court to generically define what reasonable efforts requires? I don't know how you could more generically define it than reasonable efforts. Well, you could say that the standard of care of civilian medicine would have to be met by the VA in terms of the choice of the examiner and the depth of the examination and the sort of criteria that the examination looked at. You know, one reaction to that is... I don't think that's necessary. And I also don't think that this court really is in a position to try to examine what the various standards of care are. I mean, who's to say that the VA claimant doesn't get a better standard of care than the average civilian? Well, if he does, then you would meet the definition this court perhaps, perhaps not, would give to reasonable assistance. You would say that in a case like this, there was reasonable assistance. As a matter of fact, it was even better than the civilian standard of care. Well, I don't think under any definition of standard of care in this case you have any question about the assistance that was provided, nor actually do you have a legal issue presented to this court that there was some question about the assistance. Let me tell you what's troubling me about this case. It sounds to me like Mr. Skozin was substantially impaired. Maybe not totally, apparently not totally, found not totally, but substantially. So the Veterans Administration selects some medically or psychiatrically trained person to examine him, and an examination occurs. But if I'm right that he's substantially impaired, if the examination involves nothing other than interviewing him, it's not clear that it's going to be a sound, competent examination. If he's half crazy, and he's the only source of information, the information may be quite incomplete and maybe not even reliable. I mean, I can't be... I'm certainly not an expert in mental health care, so I don't know how someone goes about actually performing an examination. Well, let me give you an example from this case. The Veterans Authority seemed to be moved by the letter that his wife wrote. That seemed to be part of the basis of increasing from 50% to 70%. Now, if he's substantially impaired, and she has eyewitness observations about his level of functionality, then maybe a competent exam would require that she and he come in and are each interviewed by the veteran's psychiatrist. That's possible, Your Honor. Frankly, I don't know if that's even consistent with the state-of-the-art in medical science. I do know that you're really suggesting another duty-to-assist argument, which is similar to other ones I've seen raised before the board before that may or may not result in a remand. And again, that question involves an application of some standard to the particular facts of a case like this one. And to me, that strikes a 7192D. So no jurisdiction here. No jurisdiction here. But rest assured, Your Honor, as standing before you on behalf of the VA, those things are dealt with regularly by regional offices and boards. And even to the extent the case gets to the Veterans Court, which doesn't have the 7292D prohibition. Going back to the burden of production, the burden of proof argument, so we're at the stage where everything's done, the record's complete. And how then, in your view, and how does that differ from Mr. Carpenter's view, does one assess the evidence? Let's assume there's no evidence. If there's no evidence, who takes the blame for that? That's really the question, isn't it, Your Honor? In this case, the individual came in with had been rated at 50%. He was subjected to several medical examinations. And evidence was gathered. And at the end of those medical examinations, the decision-maker now, not the doctor, has to sort through that and say, what do I have? Well, he has, as the board identifies in its decision, some requirements about how I rate somebody. And at page 60 of the appendix, they identify a diagnostic code that supports the 70% rating and one that supports the 100% rating. And then prior to that, for the several pages before, you have a discussion of all the development that had taken place. And even before that, you have your factual findings. That's just the way the board tends to do these things, is they start out with their factual findings on page 52. And so in the analysis section, and this is where I think Mr. Skoczyn's having some problems, they simply say, given all that we've just said, the criteria for 70% is met, obviously, but that the criteria for 100% on page 62 is not met. So in that sense, all the decision maker is saying is, here's my whole pile of evidence. I'm looking at it all. I know that in order to give them a 70% rating, I've got to do this. In order to give them a 100% rating, these additional six factors have to be present. But they're not present. So I can't give them 100%. And so that's... So the question on burden, getting to the final point, is so if those factors aren't present, I think this case comes down to, at least the statutory interpretation, is where does that leave us? In the absence of evidence, does the government prove a negative? Is the government required to prove a negative? Or do we leave it... If there's no evidence of this, who has to prove what? And that's the thing. The argument would be, well, the reason there's no evidence was because there was a failure in the duty to assist, but that's not the argument that's being made. Instead, they're just... The argument is jumping to the conclusion that, well, because the board didn't say that, after reviewing these, the preponderant, they didn't use the word preponderant, well, that's really a reasons and bases argument. You really can't do anything about that. But the reality of it is, and I think Your Honor mentioned it earlier, is in a situation like this, where the question is, in order to get a 70% rating, you need 5 things, and in order to get a 100% rating, you need those 5 things plus an additional 5 things. And we've had medical evaluations, and clearly the medical doctors were not instructed by VA to say, go and find support for the first 5, but don't tell us if you find the other 5. That's not what happened here, nor is there any suggestion of some sort of really untoward practice like that. So what really happened was, there was a legitimate attempt by the medical examination... But what happens as a practical matter? Let's say we're left with one criteria, and that deals with a serious sleep disorder. And the board, and they look at the record, and there's no indication about whether he has one, or at least he has one, or how serious it is. Is the board then allowed to say, well, he had the burden to prove his claim, and therefore he loses? Or does the board say, well, the government has to show that it's not really serious sleep disorder, and so he wins? I mean, frankly, the times that comes up, similar situation where the examiner doesn't address something, the way I've read the board's decision is they send it back and say, go address this, and give us an answer on this question, because you're not doing that. So to me, it seems that the board is interested in obtaining all the evidence possible, like happened in this case, and then sitting down with it in front of them and saying, this is where it totals up. And that's the classic decision-maker decision that you say, this is the evidence here, and this is the evidence here, and I don't see... So the government isn't arguing that the board... Well, the government is arguing that there's no sort of... ...that the claimant has a complete burden here, right? The claimant has responsibility to present evidence in support of his claim. But he did that here. He did that here and got a 70% rating. So the argument that's being made, and it really gets to that, the non-presidential Doolin case, which we noted in our brief, and again, not for presidential value, is the question of what is negative evidence? Because in this case, you have a medical professional that goes out and performs the examinations, and so his idea is, this is the state of this veteran. I'm trying to give you a complete picture, decision-maker, of what this veteran's mental condition is. The decision-maker then applies the regulations that say, you get this for that, you get that for this, and says he's satisfied, the 70%, but he doesn't satisfy the 100%. And in this board decision, that's what the board does. What I've heard today was, well, the particular condition of this veteran should have been merited 100%, notwithstanding that the 100% rating requires this. Well, like I said, that's a challenge to the rating. Or, well, I wasn't happy with the way the board described their weighing of the evidence, because they didn't say the evidence preponderance against it, but they clearly do say that. When they say, there's 70%, you have to have these factors, 100%, you have to have these factors, the evidence shows only 70%. It does not show 100%. That is saying that the evidence doesn't preponderate in favor of the veteran in support of his claim. And so the question is, does the evidence have to preponderate, does there have to be some positive evidence to preponderate in favor of the veteran, or at least get him to 50% so he can benefit from 5107B's tie go to the runner? Yes. Then there's clearly a burden on the veteran, the claimant. And the only way you can interpret the support part is to say that ultimately, if the evidence doesn't stack up, he doesn't win. Otherwise, I mean, we're talking about two different things. At the end of the day, I look at this case, and it's simply a complaint about the way the board wrote its decision. And a sort of attack on this idea that, and especially in this case, when you have, say, five criteria that allow you to get a 70% rating, but then you need an additional five on top of those to get to the 100%. And the medical examiners identify the state of the individual, and they identify evidence that would support those first five, but not the second five. And then that in itself is evidence against 100% rating. It's not like we have an assistance, like the Chief Judge was talking about earlier. It's not like we have a situation in this case where someone was told, only go look for those first five, and that's really not what the VA is supposed to be doing. They're supposed to be gathering all the evidence. Is there any difference between saying that the Veterans Department has a burden of proving preponderant evidence against the claim, which is what Mr. Carpenter suggests we should hold, and saying, on the other hand, that the Veteran has fallen short of probative evidence that would get to equipoise? Is there any difference between those two things, other than obviously the semantic difference that in the one case you're saying the burden is on the Veterans Department and in the other case you're saying the burden is on the Veteran, but in terms of practical functioning, is there any difference? Frankly, I don't think... You're just describing two sides of the same coin, I think, Your Honor, so I'm not sure there is any practical difference between saying that. In which case, maybe there's no need to try to articulate who has the burden. That would be if... Again, I find this case to be about a lot of things, but not necessarily about this burden thing that we discussed. We provided our review of the statutory language. We don't think that the VCA changed anything other than to remove the well-grounded claim requirement. We cite to the legislative history. We cite to this Court's prior decisions in Jandro and Comer, which again go to the idea that obviously the Veteran has a role in this. Maybe I'm getting confused now. As I understand, your position is you agree that the Veteran met his burden of production, and then the only thing left for the lower court or this Court to even look at is the weighing of what evidence was presented to the Board. The answer is this, Your Honor. So what happens given the facts of this case? Given that the Veteran gave all the information that he had, and so there can't be any question that the Veteran was holding something back, and given that the VA performed all the assistance it could and gathered all the documents it could, so there can't be any question that the VA did anything wrong with its assistance. At the end of the day, the decision-maker just looks at all that evidence and makes the call. Are we at the 50% or not? And in this case, they said no. So it doesn't really... The argument, the reactive argument by Mr. Skolzin is, frankly, but he didn't list for me those four pieces of evidence that the 100% rating requirement... Well, they do, actually, but, you know... In fact, he concedes that, as you pointed out earlier in this brief before the Veterans Court. He concedes that the evidence didn't rise to the level of 100%. And I think, ultimately, the argument comes down to, as it did in the Doolin case, so what does that mean in a situation where the decision-maker just has to weigh all the evidence? The way the whole process works, as I said earlier, the VA does not instruct the medical examiners to go out and say... That's not an issue in here. We don't need to get cognizant. But I think, ultimately, that's the sort of challenge to this case. You have a case where the veteran gave all his information, the board, regional office, did all they could do, the evidence was weighed, and it simply didn't come up to the 100% level. Yeah, but Mr. Carver's argument seems to be that, yes, they weighed it, they had all the evidence, everything that was relevant was gathered, they had all the evidence, but they weighed it on the wrong kind of scale because they weighed it on the scale putting the burden on him and the burden should have been on them. I don't see where he gets that, other than the fact that he didn't prevail. So the only factor about this case that would even suggest that is the fact that he didn't prevail. But that's not a factor at all because what happened is that the decision-maker weighed the evidence and determined that there wasn't enough to even get to the 50% as far as the 100% rating. There was enough to get to the 70%, but those were different requirements. So what's really at issue? Are we complaining about the requirements that we have to meet? Not necessarily the evidence, but maybe the requirements are too high. And I heard a little bit of that in the discussion this morning. Well, this person really was affected by his post. He had all these, he had these letters. Well, that's not an issue here, as Mr. Carpenter conceded. You can argue at all that maybe the standard should come down, but that's not what's presented here. It wasn't presented below. So are you saying essentially that the issue might present itself in a case where the conclusion is based on the absence of evidence at all? Then burden, who's got the burden, what kind of burden becomes relevant and if not dispositive? But in this case, it wasn't an absence of evidence. All the evidence that was necessary to reach the conclusion was there, and therefore the burden question is not really dispositive. Well, I think even in your hypothetical, Your Honor, given the fact that both parties performed all their responsibilities as far as assistance and support, that if there's absolutely no evidence at all on an issue, then it can't lead to the automatic granting of a claim. You have to have some evidence. Well, that's where it becomes a burden issue. I think Mr. Carpenter would say, yes, if there's no evidence that he had any sleep disorder, which means that then Mr. Carpenter says he would lose if the ultimate question was does he have a sleep disorder. Ultimately, you would have a standard by which you would say, well, what's he seeking? What is the benefit that he's seeking? Why is he seeking this? What's the disability he claims? And so he doesn't present, nor is the VA, despite valid attempts, able to obtain any evidence that suggests that he actually has a disability. There's no evidence at all. Well, that no evidence at all in support of is 100% evidence against, given the fact that you have to do the assessment. All right. I think we have the government's position well in mind, and we've given you lots of extra time, too. Mr. Carpenter, we'll give you two minutes for rebuttal with the caution, no need to repeat anything already covered in your extensive earlier argument. So if there's anything you didn't cover that he surprised you with when Mr. Hockey spoke, you're certainly entitled to address just that. Can I just ask one question? What is the relief you're seeking from this report? A remand to the Veterans Corp with a direction that the VA has the exclusive burden of proof. You're not asking for a direction to 500%? No. You can't? No. I'd like to begin at page 60 of the joint appendix where you'll find the diagnostic rating criteria for 70%, and at the bottom of the page it begins with 100% and continues on to page 61. I'm sorry, what page? 60 and 61, Your Honor. A 70% rating may be assigned where there is occupational and social impairment with deficiencies in most areas such as work, etc., etc. A 100% rating may be assigned where there is a total occupational and social impairment due to such symptoms as, and then it lists a series of symptoms. Now, I would direct the Court's attention to the language that Judge Probst was focusing on at page 62, which is the medical evidence recited above indicates the Veteran remained oriented to time, his memory was essentially intact. Those criteria appear in neither rating criteria. So it is a statement that the evidence demonstrates nothing relevant to how to evaluate this particular individual. But why is that the same as saying he has shown none of the things listed under the category of 100%? Because it confuses whose burden it is. And if they had said that, then clearly I think there would be a clearer perception on the part of this Court as to what the error was. Let me put it this way. I'm reading their decision as saying we find zero evidence in support of any 100% probative factor and therefore we rule against the Veteran. I'm sorry, Your Honor, you cannot read it that way, particularly when you look at page 59 of the Board's decision, which recites that the record contains a May 25 letter from the VA staff psychiatrist and social worker. These are the two individuals who are treating him. I won't take the time to read through there, but it is a description that fits within the rating criteria for 100%. Now clearly, Mr. Skozin and I were faced with the question of do we argue that the evidence was in equipose? Do we argue that there was in fact a preponderance of evidence in favor? But if we don't have a decision that starts from the assertion on the part of the Board that there was a preponderance of evidence against, we don't have a basis to start from. And that's the problem without a legal determination by this Court of what the allocation of burdens must be. Thank you very much, Your Honor, unless there's any further questions.